ALBRIGHT et al. v. SMITH et al.

1. By section 5470, Comp. Laws, a subcontractor is entitled to a lien, as defined in the preceding section, for labor done or material furnished, if, within 60 days after the doing of the labor or the furnishing of the

material, he file with the clerk of the circuit court of the proper county
or subdivision the account of the demand due him as therein provided.

2.  Such lien, within the limit of the contract price between owner and con-
tractor, may be enforced, irrespective of the state of the account be-
tween the owner and contractor, or the amount due or unpaid upon
such contract.

3.  So construed, said section 5470 is not unconstitutional, as impairing the
obligation of the contract between the owner and the contractor.

(Syllabus by the Court.  Opinion filed March 22, 1893.)

Appeal from circuit court, Hughes county.   Hon. H. G. FUL-
LER, Judge.

In an opinion found in 2 S. D. 577, 51 N. W. 590, the court af-
firmed the decision of the lower court.   Subsequently a rehearing
was granted, and this opinion is upon the rehearing.   The former
opinion is affirmed.

*Crawford & Deland*, for appellant.

*Dillon & Holmes*, for respondents.

KELLAM, J.   The former opinion of this court may be found in
2 S. D. 577, 51 N. W. Rep. 590, where the questions then con-
sidered as controlling in the case were discussed at length.   A re-
argument was allowed principally upon the ground, as urged by
appellants, that this court had failed to apprehend and give the
proper effect to the various amendments by successive legisla-
tures, by which the original law, adopted from Iowa, and appear-
ing as chapter 31 of the Code of Civil Procedure, has become the
present chapter of possibly incongruous sections upon the sub-
ject of mechanics' liens.   Having patiently reviewed the whole
ground as well as we were able, with the assistance of elaborate
briefs on both sides, we are satisfied that our former decision
of this case was right.   The contention between the parties here
is as to the meaning and effect of section 5470, Comp. Laws, con-
sidered with reference to and in the light of its history, and the
bearing upon it of other sections of the law.   The original section
was section 656 of the Code of Civil Procedure, and, as imported
from Iowa, provided that the subcontractor might give notice

to the owner, before or when he furnished the labor or material, of his intention to do so; afterwards and within 30 days, make a settlement with the contractor therefor, and file a statement thereof with the clerk, giving a copy of the same to the owner, etc.; and this would entitle him to a lien for the amount due. Section 5472, a part of the same original law, was designed to save the lien in cases where the subcontractor had neglected to give the notice before or at the time of furnishing the material or doing the labor. It provided that in such case he might, at any time within six months after such material was furnished or labor done, make a verified statement of the same, give notice to the owner, and file such statement with the clerk, and he should have a lien, but only to the extent of the balance due from the owner to the contractor at the time of the service of such notice and statement. Section 5473 provides that if the contractor refused to make the settlement with the subcontractor referred to in the said original section 656, Code Civil Proc., the subcontractor may make his own just and true verified statement of the labor done or material furnished, giving the same to the owner, and within 30 days filing a copy of the same. Section 5474 then provides that such certificate of settlement between the contractor and subcontractor shall justify the owner in withholding from the contractor the amount thereby appearing to be due the subcontractor. In 1881, by chapter 94, the legislature amended section 656, the original, as before observed, of our present section 5470, Comp. Laws, by striking out the provision as to a settlement between the contractor and subcontractor and the filing of the same, and provided that, within 60 days after furnishing the material or doing the labor, he should file his own verified statement of the amount due him therefor, and by adding that a failure to file the same within the time prescribed should not defeat the lien, except as against purchasers and incumbrancers in good faith without notice, whose rights accrued after the 60 days, and before any claim for lien was filed, and as against the own-

ers, "except the amount due the contractor at the time of filing the same." This left the law so as to require the subcontractor to give notice to the owner that he was about to do work or furnish material for the contractor, and to make and file his verified statement of the work or material so done or furnished within 60 days, and thus establish his lien therefor, provided, that, if he did not file such statement within the time prescribed, then his lien should not be good against the subsequent purchasers or incumbrancers named, or against the owner, except as to the amount still due the contractor. But, as observed, it struck out all provision for a settlement between subcontractor and contractor, and for notifying the owner, and filing such settlement, and, it would seem, undermined or made inoperative section 659, Code Civil Proc., (section 5473, Comp. Laws;) for it wiped out and extinguished the entire requirement of settlement, noncompliance with which was the only condition upon which such section was to have effect. Section 659 (section 5473, Comp. Laws) was only a sequel to the settlement feature of the original section 656, and it would seem that, when such feature of settlement was dropped out of the law, all its incidents went with it; that, there being no longer any settlement provided for, the notice predicated upon it also became obsolete. But in 1883, by chapter 84, a more radical change was made concerning the rights of subcontractors, by striking out of said old section 656 the provision as to notice by the subcontractor to the owner of his intention to furnish labor or material. So that, so far as the subcontractor's rights, as defined by this section, are concerned, no prior or contemporaneous notice is necessary, because the provision requiring it was deliberately dropped out by the amendment of 1883, and no subsequent notice drawn from the service of a copy of the settlement is required, because the entire provision for a settlement upon which such subsequent notice depended, and of which it was an incident, was repealed by the amendment of 1881.

The section, as so amended, is section 5470, Comp. Laws, the one we are now considering, and gives the subcontractor a lien for the amount due him, if, within 60 days after the material shall have been furnished or the labor performed, he file in the clerk's office a just and true account thereof, etc. It further expressly provides that, if he fail to file such account within said 60 days, his lien shall be good only to the extent of the amount due the contractor at the time he does file such account, thus making still plainer, if possible, the intent of the legislature that, if he did so file the account within the time named, he should have a lien for the full amount due him, without regard to the state of the account between the owner and the contractor. In this case it is conceded that the respondents, as subcontractors, did file their account within the 60 days prescribed, and in our opinion no other or different notice was required from them. Appellants cite a number of cases from Iowa construing their lien law, and urge the familiar rule that, in adopting the Iowa law, we adopted the construction which the courts of that state had given it; but this case did not arise under the borrowed law, but under a law so amended and changed, as we have endeavored to show, as to make it a distinctly different law, to which the Iowa cases are to such extent inapplicable.

Another point raised by the appellants, which we feel required to notice briefly, is that respondents as subcontractors were bound to take notice of the terms of the building contract between the owner and the contractors, one of which was, as found by the referee, that payments should be made thereon as the work progressed. But assuming, not only that respondents should be charged with notice of this agreement between the owner and the contractors, but that they had actual knowledge of it, and furnished the material in question in view of it, we do not perceive how it could affect the questions in this case. Such agreement only fixed the time when payments should become due from the owner to the contractors. The distinctive feature of

the lien law is, as we construe it, that the subcontractor looks for his security, not to the money earned by the contractor, but to the property itself. It is true that the subcontractor's rights are subordinate to the terms of the contract between the owner and contractor; that is, he could not furnish and have a lien for brick for the construction of a building which the owner had contracted to have built of wood, nor could he, we think, do labor or furnish material, and have a lien therefor, in excess of what the owner was to pay for the building. Whether the law under consideration does, or whether the legislature could enact a valid law which would make the owner's property chargeable with the payment of subcontractors' liens, exceeding in the aggregate the contract cost, are questions not presented in this case. We do not think there is anything in the facts found as to when or how payments become due that would preclude respondents from asserting their lien.

Lastily, it is contended that if the statute means what we construe it to mean, it is obnoxious to the constitutional objection that it impairs the obligation of the contract between the owner and the contractor. If this question were now presented for the first time for judicial examination and settlement, we confess we might hesitate; but the question has several times been directly presented to different courts. In Laird v. Noonan, (Minn.) 20 N. W. Rep. 354, the question was distinctively discussed. The opinion says: "The purpose of the amendment of 1878, reducing the statute to its present form, was evidently to extend and more fully protect the rights of subcontractors, laborers, and material men, and thereby the land, and not the amount due the contractor, becomes the pledge or security for the payment of their claims. As respects the amount which may thus be secured, their rights are not dependent upon or limited by the amount due the contractor from the owner under the original contract, nor by the state of the accounts between them." With this meaning of the law declared, it was held valid. In Bardwell v. Mann, (Minn.)

48 N. W. Rep. 1120, the same objection was made against the lien laws of 1889. The question was again discussed, with the same result. In Colpetzer v. Trinity Church, (Neb.) 37 N. W. Rep. 931, the court took the same position with reference to the effect and the validity of the lien laws of that state. While that case involved facts not existing in this, and which appellants argue are sufficient to impair its force as an authority here, still the syllabus, which is by the court, plainly states the general doctrine which the opinion was intended to declare, and in the body of the opinion the court cites with approval Laird v. Noonan, *supra.* In these several opinions many cases are cited bearing with more or less directness upon the points involved. The other questions discussed upon the reargument were quite fully considered in the opinion written by Judge Bennett, and the disposition then made of them is still satisfactory to us. Our former judgment is affirmed, all the judges concurring.