## HORACE E. HORTON v. CROWLEY ELECTRIC COMPANY and others.[1]

July 23, 1909.

Nos. 16,210—(200).

**Contractor's Bond Secures Subcontractor on Public Works.**

Laws 1895, c. 354, §§ 1 and 4, relating to bonds of contractors for public works, as amended, construed.

*Held*, that one who furnishes materials and labor in the performance of a contract for any public works as a subcontractor, pursuant to a contract between him and the original contractor therefor, is entitled to the benefit of the contractor's bond required by the statute.

[1]Reported in 122 N. W. 312.

Action against Crowley Electric Company, The Empire State Sure-. ty Company of New York, and the Village of Bagley in the district court for Polk county to recover $1,850 for materials and labor furnished by plaintiff as subcontractor to defendant Crowley Electric Company in constructing a system of waterworks for defendant village of Bagley. Defendant The Empire State Surety Company of New York was surety on the statutory bond furnished by the Crowley Electric Company. The case was tried before Watts, J., who found in favor of plaintiff for the sum demanded. From an order denying the motion of the surety company to amend the conclusions of law and order for judgment or for a new trial, it appealed. Affirmed.

*M. H. Boutelle* and *N. H. Chase,* for appellant.

*W. E. Rowe,* for respondent.

START, C. J.

The short facts of this case are these: The defendant Crowley Electric Company, in May, 1905, entered into a contract with the village of Bagley for the construction of a system of waterworks for the village. The contract price was $5,868, and the electric company, as principal, and the defendant surety company, as surety, executed a bond in that sum to the village as required by statute then in force. The plaintiff furnished the materials and labor and erected the steel frame of a tower, which was a part of such system, for which the electric company promised to pay him the sum of $1,850, the reasonable value thereof, no part of which has ever been paid. Such materials and labor were furnished by the plaintiff, as a subcontractor, under a contract between him and the electric company therefor. This action was brought in the district court of the county of Polk to recover of the surety company on its bond the value of the materials and labor so furnished in the performance of the contract by the plaintiff. The trial court found in detail the facts we have briefly indicated, and as a conclusion of law directed judgment for the plaintiff against the surety company, which appealed from an order denying its alternative motion to amend the conclusion of law or for a new trial.

This appeal is, in legal effect, one from an order denying a motion for a new trial. Nikannis Co. v. City of Duluth, supra, page 83, 121 N. W. 212; Wolf v. State Board of Medical Examiners, infra,

page 523, 121 N. W. 395. The record presents only the question whether the trial court's conclusion of law is justified by the facts found; or, to state it concretely, whether one who furnishes materials and labor in the performance of a contract for a public work as a subcontractor, pursuant to a contract between him and the contractor for the whole thereof, is within the protection and benefit of the statute providing for bonds by contractors for public works. The statutory provisions, in force when this action had its inception, relevant to this question, are sections 1 and 4 c. 354, pp. 757, 759, Laws 1895, as amended by sections 1, 2, c. 307, pp. 566, 567, Laws 1897, and section 1, c. 321, p. 536, Laws 1901.

The here material provisions of section 1 are to the effect following: Before any contract for the construction, alteration, or repair of any public works shall be valid for any purpose, the contractor shall enter into a bond with the municipality for which the work is to be done, "for the use of the same, and also for the use of all persons who may perform any work or labor or furnish any skill or material in the execution of such contract, conditioned to pay as they become due all just claims for all work and labor performed and all skill and material furnished in the execution of such contract, and also to save the obligee named in such bond harmless from any cost, charge and expense that may accrue on account of the doing of the work specified in such contract." The bond must be in an amount not less than the contract price. The provisions of section 4 are to the effect that: Whoever performs any work or furnishes any material in the execution of such contract at the request of the contractor or subcontractor, or their respective agents, heirs, personal representatives or assigns, shall be considered a party in interest in the bond and may bring an action thereon for the reasonable value or agreed price of such material furnished and labor performed in the execution of such contract.

The claim of the surety company is that the plaintiff is not within the statutory provisions referred to, because the materials and labor furnished by him in the execution of the work were furnished by him as a subcontractor under a contract between him and the electric company, the contractor. This claim necessarily implies that the statute

cannot reasonably be construed so as to include such a subcontractor in the list of those entitled to the benefit of the bond. Avery v. Board, 71 Mich. 538, 39 N. W. 742, which was followed in People v. Cotteral, 119 Mich. 27, 77 N. W. 312, construing a somewhat similar statute, and holding that it was for the benefit of laborers and materialmen, and not subcontractors, is cited in support of this claim. The statute construed in the case cited provided that the condition of the bond should be "for the payment by the contractor and all subcontractors for all labor performed or materials furnished;" that is, contractors and subcontractors were expressly placed in the same class by the statute. It would seem, then, that the case cited was correctly decided, but that it is not here in point. However this may be, we cannot construe the statutory provisions here in question as claimed by counsel for the appellant.

The argument in support of the construction claimed is summarized in their brief as follows: "No right of action upon the bond thus furnished inures to the benefit of the contractor, who is supposed to look to the municipality for his pay and to be amply secured, upon the theory that all municipalities are solvent. No right of action on the bond accruing in favor of the contractor, it is difficult to see how a subcontractor, or assignee of the principal contractor, could possess any higher or greater rights or privileges. If such was the case, the principal contractor could sublet the entire contract to a subcontractor, who, by bringing action upon the bond, would not only subvert the sole purpose and intent of the statute, but, under a set of facts easily supposable, render the act absolutely unavailable for the very purposes for which it was enacted."

It is true that no right of action inures to the benefit of the contractor, for he is the obligor in the bond. It would be absurd to require a man to give a bond to pay himself for materials and labor furnished by him. Nor is there any necessity for any provision in the law to secure him, for if he performs his contract all the taxable property of the municipality is pledged for the payment of the contract price. But it does not follow, from this concession, that one who furnishes materials and labor in the performance of the contract as a subcontractor, under a contract between him and the contractor, is

excluded from the benefits of the bond; for he is not one of the obligors thereof, nor has he any contractual relations with the municipality, nor any lien for his labor and materials, nor any claim upon the municipality for their payment. If the materials and labor in this case had been furnished upon the simple request of the contractor, there could be no question that he was within the letter and spirit of the statute; and it is difficult to suggest any good reason why he should be excluded from the benefits of the bond because the contract under which they were furnished was an express one, instead of an implied one.

It is suggested that the contractor might sublet the entire contract, and the subcontractor, by bringing an action on the bond, could subvert the purpose of the statute. It is not suggested how such a result could reasonably follow. If the entire contract was sublet, then the contractor would not furnish any labor or material for the execution of the contract, and there could be in such a case no claimants to an interest in the bond by reason of an act of the contractor. The only claimants in such a case would be those who furnished materials and labor at the request of the subcontractor. If the subcontractor did not pay such claimants, they would be, by the express provisions of the statute, protected by the bond. If the contractor sublet the entire contract, and it was entirely completed by the subcontractor, who paid in full for all materials and labor, and the contractor collected the contract price from the municipality, but failed to pay the subcontractor, would it not subvert the purposes of the statute to deny him the benefit of the bond? Can such benefit be denied him without amending the statute by construing it so as to except subcontractors from its positive and unambiguous provision that the bond shall be for the use of all persons who may furnish materials or labor in the execution of the contract? The provisions of sections 1 and 4 must be construed together, and liberally; for they are all found in the same remedial statute, the purpose of which is the protection of those who furnish materials and labor in the execution of a contract for public works, to which the mechanic's lien law does not apply. Wilcox Lumber Co. v. School District No. 268 of Otter Tail County, 103 Minn. 43, 114 N. W. 262.

Clearly a subcontractor is within the letter, spirit, and purpose of the provisions of section 1; for he furnishes labor and material, or both, for the execution of the contract at the request of the contractor. We find no trouble in so construing the statute, for section 1 expressly provides that the bond shall be for the use of all persons who may perform work or furnish material in the execution of the contract, and that the condition of the bond shall be the payment of all just claims as they become due for such materials and work. This language is so clear and specific that there is no room for construction.

It is obvious that the provisions of section 1 include subcontractors in the list of those entitled to the benefit of the bond, unless the provisions of section 4 modify, in this particular, section 1. The only provision of section 4 which can possibly be claimed to exclude subcontractors is the one which provides, in enumerating those entitled to the benefit of the bond, that those who furnish materials or perform labor in the execution of the contract at the request of any subcontractor shall be considered a party in interest in the bond. This provision must be read in connection with the provisions of section 1, giving subcontractors who furnish materials and labor an interest in the bond. So reading and construing the provision, it is clear that its purpose was not to restrict the operation of section 1, but to remove any uncertainty as to the right of one who furnished labor and material at the request of the subcontractor, which might otherwise arise from the fact that by section 1 a subcontractor was given an interest in the bond.

We so construe the provisions of sections 1 and 4, and hold that one who furnishes materials and labor in the performance of a contract for any public works as a subcontractor, pursuant to a contract between him and the original contractor therefor, is entitled to the benefit of the contractor's bond required by the statute in such cases.

Order affirmed.